**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KSF ACQUISITION CORPORATION, d/b/a SLIMFAST,<br><br>        Plaintiff,<br><br>   v.<br><br>WELLNX LIFE SCIENCES INC., WELLNX DR INC., and WELLNX LIFE SCIENCES USA,<br><br>        Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, KSF Acquisition Corporation d/b/a SlimFast ("SlimFast" or "Plaintiff") hereby files this Complaint against Wellnx Life Sciences, Inc., Wellnx DR Inc., and Wellnx Life Sciences USA ("Defendants"), and alleges on personal knowledge as to itself and its actions, and upon information and belief as to the actions of others, as follows:

## NATURE OF THE ACTION

1.      Plaintiff is the owner of the famous SLIMFAST® brand.  This case involves willful acts of trademark infringement, dilution, unfair competition, breach of contract and related actions by a direct competitor of the SLIMFAST® brand who intentionally and knowingly has violated, and continues to violate, a court-entered settlement agreement dated December 3, 2008 (the "Settlement Agreement") prohibiting Defendants from advertising, marketing, offering for sale, and selling meal replacements and beverages under the SLIMQUICK name and unfairly and maliciously trading on the reputation of the SLIMFAST® brand's extremely popular and famous SLIMFAST® brand meal replacements, drinks, and related products.

1

2.     Examples of Plaintiff and Defendants' respective products at issue are depicted below and attached hereto as Exhibits A and B, respectively:





**Plaintiff's Product**                    **Defendants' Product**

3.     Defendants' unauthorized manufacture, advertisement, promotion, offer to sell and sale of its infringing meal replacement and beverage products under the SLIMQUICK name provides the basis for this action at law and in equity.

4.     Plaintiff seeks a temporary restraining order, preliminary and permanent injunctive relief, damages, and such other relief as the Court deems proper.

## THE PARTIES

5.     Plaintiff is a corporation duly organized under the laws of Delaware, having a primary place of business at 11780 U.S. Highway One, Suite 400N, Palm Beach Gardens, Florida 33408.

6.     On information and belief, Defendant Wellnx Life Sciences Inc. is a Canadian company, having a primary place of business at 6335 Edwards Boulevard, Mississauga, Ontario L5T 2W7, and an office located at 1201 N. Orange Street, Suite 741 Wilmington, Delaware 19801.

7.      On information and belief, Defendant Wellnx DR Inc. is a Canadian company, having a primary place of business at 6335 Edwards Boulevard, Mississauga, Ontario, L5T 2W7, and an office located at 1201 N. Orange Street, Suite 741 Wilmington, Delaware 19801.

8.      On information and belief, Defendant Wellnx Life Sciences USA is a United States company and affiliate of Wellnx Life Sciences Inc. and Wellnx DR Inc., having a place of business at 1201 N. Orange Street, Suite 741 Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)-(b); and 15 U.S.C. § 1121. The amount in controversy is in excess of $75,000 exclusive of interest and costs.  This Court has supplemental jurisdiction over Plaintiff's claims under the laws of the State of New York pursuant to 28 U.S.C. § 1367.

10.      This Court has personal jurisdiction over Defendants because Defendants have and continue to advertise, promote, display, ship, offer for sale, sell, and distribute its meal replacement and beverage products under the SLIMQUICK name within the State of New York and within the Southern District of New York.  In addition, the Settlement Agreement arose from a prior litigation in the Southern District of New York (*Unilever Supply Chain, Inc. et al. v. Global Health Technologies, Inc. et al.* (Civil Action No. 08-cv-3775)) (hereinafter, the "*Unilever* Litigation"), to which Defendants were a party, and which Settlement Agreement was entered into record by Magistrate Judge Andrew J. Peck in this District.

11.      Personal jurisdiction over Defendants is also proper by virtue of their transacting and doing business in this district and pursuant to N.Y. Civ. Prac. L. & R. §§ 301 and 302(a). Upon information and belief, Defendants have regularly solicited and conducted business in the State of New York and this District, and have wrongfully caused injury to Plaintiff in the State of

New York and in this District, such injury being reasonably foreseeable, and derive substantial revenue from interstate commerce.

12.     Personal jurisdiction over Defendants is also proper because Defendants have consented to the jurisdiction of this Court on at least one instance.  For example, on April 3, 2017, an action was brought by SLIMFAST against Defendants in this Judicial District, entitled *KSF Acquisition Corp. d/b/a SLIMFAST v. Wellnx Life Sciences Inc. et al.*, No. 1:17-cv-01161-KPF (S.D.N.Y) ("the *KSF* Action").  On June 22, 2017, Defendants filed a motion to dismiss, and in doing so, did not challenge plaintiff's basis for personal jurisdiction, which is the same basis for personal jurisdiction set forth herein.  (*See* the *KSF* Action at D.I. 33; *compare id.*, the *KSF* Action, D.I. 1 at ¶¶ 8-10 to ¶¶ 8-10 *supra*).

13.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants transact business in and/or have substantial contacts with and/or may be found in the State of New York and this District.  Venue is also proper because Defendants have and continue to advertise, promote, display, ship, offer for sale, and sell their products in direct breach of the Settlement Agreement within this State and within the Southern District of New York. In addition, the Settlement Agreement to which the Defendants were a party was entered into record by Magistrate Judge Andrew J. Peck in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELEIF

### A.  Plaintiff's Activities and its Famous SLIMFAST® Marks

14.     Plaintiff is a leading manufacturer, distributor, and seller of meal replacement and weight management products.  Plaintiff advertises, promotes, displays, ships, offers for sale, sells and distributes its products throughout the country in interstate and intrastate commerce, and abroad in foreign commerce, under its famous SLIMFAST® Marks (defined below in ¶ 16).

15.     The SLIMFAST® brand and business was originally owned by Unilever Supply Chain, Inc. ("Unilever").  The SLIMFAST® brand and business was acquired from Unilever by Plaintiff.  Plaintiff is the successor-in-interest to Unilever's SLIMFAST® brand and business.

16.     Plaintiff is the owner of the following valid, subsisting U.S. trademark registrations (collectively, "the SLIMFAST® Marks"):

| MARK | REGISTRATION NO. / DATE | GOODS AND SERVICES |
|---|---|---|
| SLIM-FAST | 1,102,508 ('508 Registration) September 19, 1978 | Protein food supplement |
| SLIM-FAST | 1,288,616 ('616 Registration) August 7, 1984 | Beverage powder meal replacement mix |
| SLIM-FAST | 1,358,816 ('816 Registration) September 10, 1985 | Dietary meal replacement nutritional bars, and instant pudding meal replacement mix |
| SLIM-FAST | 2,936,919 ('919 Registration) March 29, 2005 | Meal replacement bars |
| SLIM-FAST PLAN | 4,928,571 ('571 Registration) March 29, 2016 | Dietary foods, meal replacement bars, ready to drink meal replacement shakes |
| SLIMFAST | 5,013,235 ('235 Registration) August 2, 2016 | Dietary foods, milk based beverages and preparations and powders, cereal bars, and providing information and advice in the field of weight management, nutrition, and health |

17.     The '508 Registration, the '616 Registration, the '816 Registration, and the '919 Registration are each incontestable.

18.     Copies of the registrations for the SLIMFAST® Marks are attached hereto as Exhibit C.

19.     Plaintiff is also the owner of U.S. trademark application no. 88/088,128 for the mark "SLIMFAST KETO FAT BOMB" (the "SLIMFAST KETO Mark").  On February 12, 2019, this mark will be published in the Official Gazette as entitled to registration.

20.     Unilever and Plaintiff have sold their line of meal replacement and weight management products under the SLIMFAST® Marks continuously in interstate commerce throughout the United States since at least as early as 1977.  The famous SLIMFAST® Marks have appeared on product packaging, advertising, promotional materials, displays, and the like.

21.     Products bearing the SLIMFAST® Marks are currently available, offered for sale, and sold to consumers throughout this Judicial District, this State, and the United States through numerous mass retail trade channels, such as supermarkets, drug stores, convenience stores and national chain stores including such leading retailers as Walgreens, Rite-Aid, Wal-Mart, Target, CVS, Albertsons, the Vitamin Shoppe, H-E-B, Kroger, and Duane Reade, and on internet websites such as www.drugstore.com, www.amazon.com, www.target.com, and www.wal-mart.com.

22.     Over the years, the volume of sales of goods in the United States sold under the SLIMFAST® Marks has been enormous.  The SLIMFAST® brand of meal replacement and weight management products is the largest selling brand for these products in the United States with billions of dollars in sales in the United States since 1977.

23.     The extraordinary success of the SLIMFAST® brand products over many years has fostered wide renown with the trade and public and the products sold under the brand have a reputation for being of the highest quality.  As a result of such success, and the long, continuous

and exclusive use of the SLIMFAST® Marks in connection with the marketing of meal replacement and weight management products, such products have also come to be identified by the trade and public by and with the name and SLIMFAST® Marks alone.

24.     Plaintiff continuously and extensively advertises, markets, and promotes the SLIMFAST® Marks and the products sold thereunder.  Since 1977, Plaintiff and its predecessors have spent well over one billion dollars advertising and promoting the SLIMFAST® brand in the United States.

25.     Plaintiff operates a website at the domain name address www.slimfast.com, which serves to advertise, market, and promote its SLIMFAST® brand products and provide nutritional and dietary information and support to consumers of SLIMFAST® meal replacement and weight management products.

26.     Plaintiff has advertised and promoted its SLIMFAST® brand in a wide variety of national media including nationally circulated newspapers with circulation ranging from 20-45 million readers and magazines such as Glamour, Elle, People, Cooking Light, Better Homes & Gardens, and Fitness.  Plaintiff has also advertised and continues to advertise on the major television broadcast networks and leading cable networks nationwide and has done significant, nationwide radio advertising.  Plaintiff's television commercials have featured testimonials from celebrity spokespeople such as Tommy Lasorda, Whoopi Goldberg and Rachel Hunter.  Plaintiff also promotes its SLIMFAST® brand products through the Internet, billboards, banner ads, store displays, publications, sponsorship events such as concerts and entertainment performances, and tradeshows, marketing fairs and/or tours for the SLIMFAST® brand.

27.     Due to the extensive advertising, promotion, and use of the SLIMFAST® Marks, Plaintiff's SLIMFAST® Marks have acquired enormous value and have become extremely well-

7

known to the consuming public and trade as identifying and distinguishing Plaintiff's high-quality SLIMFAST® products from those of its competitors.

28.     Since 1977, there have been several meal replacement products sold under the SLIMFAST® brand, bearing the SLIMFAST® Marks.  Recently, Plaintiff began offering for sale, selling, and advertising its new SLIMFAST® KETO line of products, including the SLIMFAST® KETO meal replacement.  As described on Plaintiff's website: "Our powdered meal replacement mixes are packed with the low-carb ketogenic nutrition you need to motivate your metabolism and burn fat instead of carbs."  (https://slimfast.com/keto-shake-mixes).

**B. Previous Litigation and Settlement Agreement Regarding the SLIMFAST® Marks**

29.     Defendants were brought before this Court by Unilever, on claims of trademark infringement and additional causes of action regarding the SLIMFAST® Marks in the *Unilever* Litigation.

30.     According to the First Amended Complaint filed in the *Unilever* Litigation, Defendants were accused of marketing weight loss and dietary supplements in packaging bearing the SLIMQUICK name, both online and in stores (the *Unilever* Litigation, D.I. 5, ¶¶ 29 and 33).

31.     Upon information and belief, Defendants' lack of credible defense for their unlawful behavior against the *Unilever* plaintiffs' numerous asserted claims for relief led the parties to settle.

32.     On December 3, 2008, a settlement conference was held to enter a confidential settlement agreement on the record and under seal by Magistrate Judge Andrew J. Peck in the Southern District of New York (the "Settlement Agreement") effectively ending and settling the prior *Unilever* litigation. A copy of the transcript of the settlement conference hearing, which memorializes the terms of the Settlement Agreement, is attached hereto as Exhibit D.

8

33.     During the settlement conference Defendants voluntarily agreed to incorporate the definition of "dietary supplement" as defined by the Dietary Supplements Health and Education Act (DSHEA).  Specifically, among the terms of the Settlement Agreement, "Defendants will limit their use of the SLIMQUICK name to only 'dietary supplements' as defined in Section 3 of the Dietary Supplements Health and Education Act of 1994, Public Law 103-417 as that act has been interpreted and applied by the U.S. Food and Drug Administration."  *Id.*

34.     Section 3 of DSHEA defines the term "dietary supplement" in relevant part as a product that is not represented for use as a conventional food or as a sole item of a meal or the diet." *See* Ex. F. The FDA's *Guidance for Industry Distinguishing Liquid Dietary Supplements from Beverages* states, "Product or brand names that use conventional food terms such as . . . 'drink,' . . . represent the product as a conventional food." *See* Ex. E. In other words, any SLIMQUICK products being marketed by Defendants as a "drink" or a "shake" is therefore being promoted as a conventional food, rather than a dietary supplement.

35.     According to the Settlement Agreement, Defendants are further required to always use the six interlocking circles design logo on the front of their SLIMQUICK product packaging (Ex. D), an example of which is represented below:



36.     To comply with the Settlement Agreement, Defendants are prohibited from distributing any packaging depicting "drinks" or "shakes" and/or without the six interlocking circles design logo (Ex. D at page 7, lines 17-22). Thus, any product packaging distributed by Defendants failing to meet such requirements is a material breach of the Settlement Agreement.

37.     The record therefore makes it abundantly clear that the terms of the Settlement Agreement were not only approved by this District Court, but were also reviewed, discussed, negotiated, understood, and irrefutably agreed upon by the parties to be bound by its terms.

38.     Defendants were brought into this Court again by Plaintiff in 2017, on claims of trademark infringement and additional causes of action regarding the SLIMFAST® Marks and for breach of the Settlement Agreement (the *KSF* Action).  At that time, meal replacement products under the SLIMFAST® brands were advertised, sold, and offered for with packaging highlighting the protein in the product.  An example of this packaging is shown below:



39.     Thereafter, Defendants began advertising, offering for sale, and selling a virtually identical meal replacement product under the SLIMQUICK name, with product packaging also highlighting the protein in the product (the "SLIMQUICK Protein Product").  An image of Defendants' SLIMQUICK Protein Product is shown below and is attached as Exhibit F:



40.     Defendants were advertising, offering for sale, and selling the SLIMQUICK

Protein Product as a conventional food or drink.  Therefore, it was not a dietary supplement, which

was in direct violation of the Settlement Agreement.  Defendants' use of the SLIMQUICK mark

in its advertising, offering for sale, and selling of the SLIMQUICK Protein Product also infringed

on the SLIMFAST® Marks.

41.     The parties agreed to settle the *KSF* Action on September 8, 2017.

**C. Defendants' Unlawful Activities**

42.     Notwithstanding the above, Defendants have again violated and continue to violate

the Settlement Agreement and materially breach its terms through their activities at least relating

to their new SLIMQUICK KETO products.

43.     On information and belief, the SLIMQUICK KETO Product is not the same as the

SLIMQUICK Protein Product at issue in the *KSF* Action.  For example, on information and belief,

the SLIMQUICK Protein Product contains green tea extract, whereas the SLIMQUICK KETO

Product does not.  (*Compare* product label in Ex. F to product label in Ex. B).

44.     On information and belief, after the launch of Plaintiff's new SLIMFAST® KETO

Product (Ex. A), Defendants intentionally copied Plaintiff and began advertising, offering to sell,

11

and selling a new keto meal replacement product under the SLIMQUICK name ("SLIMQUICK

KETO product" or "Accused Product") (Ex. B).

45.    Despite the Settlement Agreement's prohibition against Defendant's marketing,

promoting, and selling "conventional foods" or "drinks" (Ex. D), Defendants blatantly flout its

terms.  The SLIMQUICK KETO product is not a dietary supplement.  Rather, the SLIMQUICK

KETO product is a conventional food.

46.    For instance, Defendants market, promote, and sell the SLIMQUICK KETO

products as a conventional food by illustrating it as a "drink" or "shake" (Ex. B), as demonstrated

by a screencapture displayed at https://www.myslimquick.com/products/slimquick-pure-keto-

protein-chocolatevanilla/, and reproduced below:



47.    According to Defendants' website at www.myslimquick.com:

SLIMQUICK® Pure Keto Protein tastes incredibly delicious and provides 20
grams of protein and 6 grams of fiber per day!  SLIMQUICK® Pure Keto Protein
sets a new standard in keto protein. The ketogenic diet is based on eating foods high
in fat, moderate in protein and very low in carbohydrate. Keto Protein is a
nutritionally balanced supplement with 70% of calories from good fats, 20% of
calories from protein and low net carbs, making it a delicious and easy support for
a ketogenic lifestyle. Plus it gives you 10 g of MCT oils!

These statements from Defendants' website confirm the product is a conventional food and/or

represented for use as the sole item of a meal, not a dietary supplement, by equating the product

to a "food[] high in fat, moderate in protein and very low in carbohydrate," emphasizing that it "tastes incredibly delicious" and that it is "nutritionally balanced," as well as identifying the caloric content of the product.

48.     Defendants have further breached the terms of the Settlement Agreement by failing to use the six interlocking circles design logo on the front of their product packaging for at least the SLIMQUICK KETO products, as shown above.

49.     According to Defendants' website at www.myslimquick.com, Defendants' products and Plaintiff's products are marketed and sold to the same prospective consumers and through the same channels of trade including Walgreens, Rite-Aid, Wal-Mart, Target, CVS, and Kroger, and on internet websites such as www.target.com and www.wal-mart.com.  As a result, Defendants' products are likely to be sold and/or presented to consumers in direct proximity to Plaintiffs products in a manner that will lead consumers to believe mistakenly that the products are related or that Plaintiff has sponsored, approved, licensed, is affiliated with, or otherwise endorsed Defendants' products.

50.     Indeed, instances of Defendants' SLIMQUICK KETO product being offered on store shelves directly beside the SLIMFAST® KETO meal replacement and drink products have already occurred and continue to occur, causing consumer confusion and inevitably leading to lost sales for Plaintiff.  For example, the SLIMFAST® KETO products and the SLIMQUICK KETO products are both offered for sale directly beside one another in Walmart.

51.     These market realities are precisely the reason why the Settlement Agreement explicitly referenced the DSHEA and FDA provisions (*see supra* at ¶¶ 32-33), forbidding Defendants from using terms such as "drink," "shake," and the like to protect consumers from

being confused or misled by such unauthorized and deceitful promotion and sale of SLIMQUICK KETO products.

52.     Defendants' SLIMQUICK KETO products bear a copy or colorable imitation of Plaintiff's SLIMFAST® Marks.  Specifically, the SLIMQUICK KETO Product bears the SLIMQUICK mark, which is essentially the same as one or more of Plaintiff's SLIMFAST® Marks.

53.     Defendants' adoption and use of a copy or colorable imitation of the SLIMFAST® Marks was deliberate and intentional and will full knowledge of Plaintiff's rights.

54.     In addition, Defendants' adoption and use of a copy or colorable imitation of the SLIMFAST® Marks was and is without Plaintiff's authorization or consent.

55.     Defendants' adoption and use of a copy or colorable imitation of the SLIMFAST® Marks was and is with the intent and purpose of confusing, misleading and deceiving the public and unfairly capitalizing on Plaintiff's initiative and goodwill.

56.     By adopting and using a copy or colorable imitation of the SLIMFAST® Marks, and by trading on Plaintiff's valuable goodwill, Defendants have caused and are likely to cause confusion, mistake and deception of purchasers and potential purchasers as to the source or origin of the Accused Products and as to the existence of an association, connection, or relationship between Defendants and Plaintiff.

57.     By adopting and using a copy or colorable imitation of the SLIMFAST® Marks, and by trading on Plaintiff's valuable goodwill, Defendants have prevented Plaintiff from building upon the goodwill established in the SLIMFAST® Marks to their detriment.

58.     Defendants' adoption and use of a copy or colorable imitation of the SLIMFAST® Marks and trade on Plaintiff's valuable goodwill was, on information and belief, an effort to boost

its sales of the Accused Products.  Defendants' actions will negatively impact sales of Plaintiff's SlimFast products, including without limitation, Plaintiff's SLIMFAST® KETO product and Plaintiff's substantial goodwill.  Defendants' acts as recited herein have been undertaken in bad faith so as to compete unfairly with Plaintiff.

59.     Defendants' actions have damaged and are likely to damage the reputation and goodwill of Plaintiff.

60.     Plaintiff is being irreparably injured and monetarily damaged by Defendants' acts. Plaintiff has no adequate remedy at law.

**D.  Plaintiff's Protests to Defendants**

61.     On January 22, 2019, in an effort to address Defendants' aforementioned infringement and breach of the Settlement Agreement without court intervention, Plaintiff's counsel sent Defendants a letter requesting a response by January 28, 2019 explaining Defendants' violation of the Settlement Agreement.

62.     To date, Defendants have provided no justification for their willful infringement and failure to comply with the Settlement Agreement.

**<u>FIRST CLAIM FOR RELIEF</u>**
**<u>(Breach Of Contract)</u>**

63.     Plaintiff repeats and re-alleges all prior allegations as fully set forth herein.

64.     Plaintiff and Defendants are parties to the Settlement Agreement, entered into on December 3, 2008.  The Settlement Agreement was entered on record by Magistrate Judge Peck in the Southern District of New York, and is governed by New York law.

65.     The Settlement Agreement is a valid and binding agreement between Plaintiff and Defendants that is in full force and effect.

66.     Plaintiff has performed all of its material obligations under the Settlement Agreement.

67.     Against the factual background plead herein, Defendants have unlawfully breached the Settlement Agreement in several material aspects.

68.     As a direct and proximate result of Defendants' breach of the Settlement Agreement, Plaintiff has suffered actual damages.  Plaintiff is entitled to recover monetary damages stemming from Defendants' breach of the Settlement Agreement in an amount to be determine at trial.

69.     Unless and until Defendants are enjoined from continuing to breach their obligations under the Settlement Agreement, Plaintiff will be irreparably harmed.  Plaintiff has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**(Federal Trademark Infringement under 15 U.S.C. § 1114)**

70.     Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

71.     Plaintiff's SLIMFAST® Marks and the goodwill of the business associated with it in the United States and around the world is of great and significant value, is highly distinctive and arbitrary, and has become universally associated in the public mind with the products and services of the very highest quality and reputation finding their source in Plaintiff.

72.     Without Plaintiff's authorization or consent, and having full knowledge of Plaintiff's well-known and prior rights in the federally registered SLIMFAST® Marks, Defendants have been advertising, promoting, displaying, shipping, offering for sale, selling, and distributing at least the Accused Products in commerce (including over the internet and at retail locations) that are conventional foods and meal replacements under the SLIMQUICK name.  Such products are

closely related to the conventional foods and meal replacements marketed and sold by SlimFast in the same trade channels.

73.     Defendants' unauthorized use of the SLIMQUICK name in connection with their meal replacements and beverages has caused and continues to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' products are manufactured or distributed by Plaintiff, or associated or connected with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff.

74.     Defendants' unauthorized use of the SLIMQUICK name in connection with their meal replacements and beverages is confusingly similar to Plaintiff's federally registered marks in violation of 15 U.S.C. § 1114, and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by the federally registered SLIMFAST® Marks for which Plaintiff has no adequate remedy at law.

75.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's exclusive rights in the federally registered SLIMFAST® Marks in violation of 15 U.S.C. § 1114 and to Plaintiff's great and irreparable injury.

76.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damage to its valuable SLIMFAST® Marks.

77.     Defendants have caused and are likely to continue causing irreparable harm to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**THIRD CLAIM FOR RELIEF**
**(Federal Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a))**

78.     Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

79.     Defendants' use of the SLIMQUICK name in connection with the advertising marketing, promotion, offering for sale, sale, and distribution of the Accused Products is likely to cause confusion, mistake, and deception of the general purchasing public by creating the false and misleading impression that Defendants' infringing meal replacements and beverages are manufactured or distributed by Plaintiff, or affiliated, connected, or associated with Plaintiff or have the sponsorship, endorsement, or approval of Plaintiff, all to Defendants' profit and benefit, and Plaintiff's damage and injury.

80.     Defendants' use in commerce of the SLIMQUICK name in connection with the Accused Products is in violation of 15 U.S.C. §1125(a), in that Defendants have made false representations, false descriptions, and false designations of origin.

81.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damage to its valuable SLIMFAST® Marks.

82.     Defendants' activities have caused, and unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by the SLIMFAST® Marks for which Plaintiff has no adequate remedy at law.

83.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's SLIMFAST® Marks, causing irreparable injury to Plaintiff.

84.     Defendants have caused and will continue to cause irreparable injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits,

actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## FOURTH CLAIM FOR RELIEF
### (Federal Trademark Dilution under 15 U.S.C. § 1125(c))

85.     Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

86.     Plaintiff's SLIMFAST® Marks are famous and distinctive, and have been so for many years prior to Defendants' conduct as alleged herein.

87.     Defendants' unlawful and unauthorized advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Accused Products in commerce will, unless restrained, dilute and impair the distinctive quality of Plaintiff's famous SLIMFAST® Marks by destroying the exclusive association between Plaintiff's marks and its goods and services, and/or otherwise lessening the capacity of the SLIMFAST® Marks to identify Plaintiff and its goods exclusively and/or tarnishing Plaintiff's valuable SLIMFAST® Marks by undermining and damaging the goodwill and reputation associated with the SLIMFAST® Marks.

88.     Defendants' aforesaid acts are in knowing and willful violation of Plaintiff's rights, and were performed with the intentional, willful, and malicious intent to improperly trade on Plaintiff's reputation and to cause dilution by blurring and dilution by tarnishment of the SLIMFAST® Marks.

89.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable harm to its valuable SLIMFAST® Marks and Defendants will, unless enjoined, continue to so injure Plaintiff.

90.     Defendants have caused and will to continue causing irreparable harm to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits,

actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

## FIFTH CLAIM FOR RELIEF
### (Dilution Under New York General Business Law § 360-L)

91.     Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

92.     Defendants' illegal acts as set forth above have caused damage to Plaintiff by diluting and blurring the distinctiveness of Plaintiff's famous SLIMFAST® Marks in violation of New York General Business Law § 360-L.

93.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable harm to its valuable SLIMFAST® Marks and Defendants will, unless enjoined, continue to so injure Plaintiff.

94.     Defendants have caused and will to continue causing irreparable harm to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under New York General Business Law § 360-L.

## SIXTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement)

95.     Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

96.     As a result of Plaintiff's reputation for its high-quality products and services under the SLIMFAST® Marks, Plaintiff has built up valuable goodwill in its marks.  As such, Plaintiff's SLIMFAST® Marks have become inextricably associated with Plaintiff's products and services, and have come to symbolize the reputation for quality and excellence of such products and services.

97.     Defendants' unauthorized promotion, packaging, and sale of the Accused Products under the SLIMQUICK name has and continues to cause consumer confusion in the marketplace with respect to Plaintiff's SLIMFAST® Marks, and is likely to and does permit Defendants to trade off of the goodwill of Plaintiff by passing off the Accused Products to the general public, all to the detriment of Plaintiff and to the unjust enrichment of Defendants.  Such acts by Defendants have caused and continue to cause confusion as to the source, sponsorship, affiliation, and/or endorsement of Defendants' products.

98.     Defendants' acts constitute willful infringement of Plaintiff's exclusive rights in the SLIMFAST® Marks, and other damages in an amount to be proven at trial.

99.     As a direct and proximate result of Defendants' willful, knowing, and malicious conduct, Plaintiff has suffered irreparable harm and damage to its valuable SLIMFAST® Marks, and Defendants will, unless enjoined, continue to so injure Plaintiff.

100.    Defendants have caused and will continue causing irreparable harm to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)

101.    Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

102.    As a result of the quality of Plaintiff's products, Plaintiff has built up valuable good will in the SLIMFAST® Marks, which have become closely associated with Plaintiff's products, and have come to symbolize Plaintiff's reputation for the quality and excellence of its products.

103.    Defendants, in bad faith and with full knowledge of the fame of the SLIMFAST® Marks, intended to and did trade on the good will associated with the SLIMFAST® Marks.

104.    Defendants' acts have and continue to mislead and deceive the public as to the source, sponsorship, affiliation, and/or endorsement of Defendants' products, permit and accomplish passing off of Defendants' goods as those of Plaintiff, and falsely suggest a connection with Plaintiff.  Therefore, Defendants have committed unfair competition in violation of the laws of the State of New York.

105.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable harm and damage to its valuable SLIMFAST® Marks, and Defendants will, unless enjoined, continue to so injure Plaintiff.

106.    Defendants' fraudulent business practices have caused and will continue causing irreparable harm to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    Entering judgment in Plaintiff's favor and against Defendants on all claims for relief;

2.    A temporary restraining order, preliminary injunction and permanent injunction enjoining and restraining Defendants, their officers, directors, agents, servants, employees, subsidiaries, affiliates and representatives and all other persons, firms or corporations in active concert or participation with them from continued breach of the Settlement Agreement;

3.    A temporary restraining order, preliminary and permanent injunction enjoining and restraining Defendants, their officers, directors, agents, servants, employees, subsidiaries, affiliates

and representatives and all other persons, firms or corporations in active concert or participation with them from:

    a.   using in any manner Defendants' SLIMQUICK name as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale, or sale of any products or services that are not Plaintiff's, or not authorized by Plaintiff, or that otherwise infringes on the rights of Plaintiff;

    b.   committing any acts that falsely or misleadingly suggest or convey to purchasers that Defendants' Accused Products are affiliated or connected with Plaintiff; sponsored, approved, licensed or guaranteed by Plaintiff; or produced under the control and supervision of Plaintiff;

    c.   doing any other act or thing calculated or likely to cause confusion or mistake in the minds of members of the public of Plaintiff's goods or services, as to the source of the goods or services marketed or offered for sale by Defendants;

    d.   further infringing Plaintiff's SLIMFAST® Marks and damaging Plaintiff's goodwill; or

    e.   otherwise competing unfairly with Plaintiff;

4.    That Defendants and those acting in concert or participation with Defendants take affirmative steps to immediately dispel such false impressions that heretofore have been created by Defendants' breach of the Settlement Agreement and infringement of the SLIMFAST® Marks in conjunction with the Accused Products, including but not limited to, recalling from any and all channels of distribution any and all Accused Products and associated promotional materials;

5.      That Defendants, within thirty (30) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath, pursuant to 15 U.S.C. § 1116, setting forth in reasonable detail the manner and form in which Defendants have complied with any injunction and/or Order that the Court may enter in this action;

6.      That Defendants account to Plaintiff for Defendants' profits and any damages sustained by Plaintiff, to the extent calculable, arising from the foregoing acts of breach of the Settlement Agreement, trademark infringement, trademark dilution, false designation of origin, unfair competition, and deceptive acts and practices;

7.      That in accordance with such accounting, Plaintiff be awarded judgment for three times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117, New York General Business Law § 349(c) and analogous state laws;

8.      That Plaintiff be awarded punitive damages pursuant to the laws of the State of New York in view of Defendants' willful breach of the Settlement Agreement, trademark infringement, trademark dilution, false designation of origin, unfair competition, and deceptive acts and practices;

9.      The Defendants deliver up for destruction all Accused Products in Defendants' possession or control;

10.     That Plaintiff be awarded reasonable attorneys' fees and costs; and

11.     Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims as to which a jury trial may be permitted.

Dated: February 6, 2019                    Respectfully submitted,


**GREENBERG TRAURIG, LLP**

*/s/ Jonathan D. Ball*
Jonathan D. Ball (ballj@gtlaw.com)
Elana B. Araj (araje@gtlaw.com)
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue, 38th Floor
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

***Attorneys for Plaintiff***

Eleanor A. Kolton (koltonm@gtlaw.com)
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100
Facsimile: (202) 331-3101

***Of Counsel for Plaintiff***